UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
STEVEN SEAGAL,

       Plaintiff

-against-

JULIUS R. NASSO,

       Defendant.
------------------------------------------------------------X

CV 07 4055

IRIZARRY, J.

POLLAK, M.J.

DEFENDANT JULIUS R. NASSO NOTICE OF REMOVAL FROM STATE COURT TO UNITED STATES DISTRICT COURT

FILED IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 27 2007 ★
BROOKLYN OFFICE

PLEASE TAKE NOTICE that Defendant JULIUS R. NASSO, through its undersigned counsel, hereby removes the above-entitled action from the Supreme Court of the State of New York County of Richmond to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C.§ 1441(b). This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C.§ 1441(b), in that it is a civil action between citizens of different states.

Defendant Julius R. Nasso states that removal is proper for the following reasons:

1.     On or about August 30, 20007, Plaintiff STEVEN SEAGAL, commenced a civil action in the Supreme Court of the State of New York, County of Richmond, against JULIUS R. NASSO by filing a Summons and Complaint. The action is styled <u>Steven Seagal v. Julius R. Nasso</u>, Index No. 103381/07 (the "State Court Action").

2. Julius R. Nasso was served by overnight mail with the Summons and Complaint, (collectively "the Pleadings") on or about August 30, 2007[1]. Julius R. Nasso has removed this action within thirty days after receipt of the Complaint in accordance with 28 U.S.C. § 1446(b). The Pleadings in this action that have been filed in State Court are annexed hereto as Exhibit "A".

3. This action is a suit of civil nature for compensatory and punitive damages, based on claims of assault, false imprisonment and intentional infliction of emotional distress, stemming from defendant's acts and conspiracy to extort money from plaintiff.

4. This action involves a controversy between citizens of different states, in that: (a) according to the face of the Complaint, Plaintiff Steven Seagal is now, and was at the time the action was commenced, a citizen of Los Angeles, California; and defendant Julius R. Nasso is now, and was at the time the action was commenced, a resident of Staten Island, New York.

5. Accordingly, the citizenship of the parties is now diverse.

6. Thus, this Court has original jurisdiction of this action pursuant to 28 U.S.C.§ 1332(a)(1) and the action is removable to this Court pursuant to 28 U.S.C.§ 1441(a).

7. A copy of this Notice of Removal will be filed with the Supreme Court of the State of New York, County of Richmond, and will be served on Plaintiff's counsel pursuant to 28 U.S.C § 1446(d).

---

[1] This service was neither proper nor complete, and Julius R. Nasso reserves the right to move to dismiss the Complaint on that, among other grounds.

7. Julius R. Nasso reserves the right to amend or supplement this Notice for Removal.

8. By filing this Notice of Removal, Julius R. Nasso does not waive any defenses which may be available to it.

WHEREFORE, Defendant Julius R. Nasso prays that the above-captioned action is removed, with the express reservation of all procedural and substantive defenses, from the Supreme Court of the State of New York, County of Richmond, to the United States District Court for the Eastern District of New York.

Dated: New York, New York
       September 27, 2007

                                HANTMAN & ASSOCIATES

                                By: _____
                                Robert J. Hantman, Esq.
                                1414 Avenue of the Americas
                                Suite 406
                                New York, NY 10019
                                (212) 684-3933
                                (212) 755-1989
                                Attorneys for Defendant

TO:

Thomas J. Hall Esq.
Eric J. Przybylko
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100
(212) 541-5369



AUG 3 0 2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

STEVEN SEAGAL,

                Plaintiff,

-against-

JULIUS R. NASSO,

                Defendant.

Index No. 103384/07
Date Purchased AUG 3 0 2007

Plaintiff designates Richmond
County as the place of trial.

The basis of venue is CPLR
§ 503(a) (defendant's residence).

**SUMMONS**

To the above named Defendant JULIUS R. NASSO

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the attorneys for Plaintiff within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:    August 30, 2007

CHADBOURNE & PARKE LLP

By_____

Thomas J. Hall
Eric J. Przybylko
Attorneys for Plaintiff Steven Seagal
30 Rockefeller Plaza
New York, New York 10112
TEL: (212) 408-5100
FAX: (212) 541-5369

Of Counsel:

Abbe David Lowell
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
TEL: (202) 756-8000
FAX: (202) 756-8087

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF RICHMOND

| | |
|---|---|
| STEVEN SEAGAL,<br><br>         Plaintiff,<br><br>  -against-<br><br>JULIUS R. NASSO,<br><br>         Defendant. | Index No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Steven Seagal by and through his undersigned attorneys Chadbourne & Parke LLP as and for his Complaint against defendant Julius R. Nasso, respectfully alleges and states as follows:

## SUMMARY OF ACTION

1. This is an action for compensatory and punitive damages, based on claims of assault, false imprisonment and intentional infliction of emotional distress, stemming from defendant's acts and conspiracy to extort money from plaintiff. Defendant conspired with and enlisted the aid and participation of members of an organized crime family to intimidate and threaten plaintiff with threats of physical injury and death with the goal of extorting money from plaintiff. Defendant's conduct was maliciously designed to, and did, cause plaintiff severe anxiety and emotional distress, as well as resulting financial injury. As a result of his wrongful conduct, defendant pleaded guilty in a criminal action to conspiracy to extort plaintiff.

Furthermore, defendant's conduct was outrageous, malicious and intended to willfully and wantonly cause injury to plaintiff, justifying the award of punitive damages.

## PARTIES

2. Plaintiff Steven Seagal is a resident of Los Angeles, California.

3. Upon information and belief, defendant Julius Nasso is a resident of Richmond County, New York.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over defendant on the basis that he resides in this forum.

5. Venue in Richmond County is proper because defendant is a resident of this county.

## FACTUAL BACKGROUND

6. Plaintiff's causes of action herein accrued in New York and arise from the subject of defendant's criminal conviction and, as a result, the statutes of limitations relevant to these causes of action are governed by Section 213-b of the New York Civil Practice Law and Rules.

7. Plaintiff is a prominent film actor who has starred in, directed and/or produced a number of motion pictures.

8. Defendant is a former business associate of plaintiff.

2

9. In the 1990's, plaintiff and defendant worked together in the film industry. To this end, plaintiff and defendant jointly participated in an independent film production venture.

10. In or about 1999, the parties terminated their business relationship.

## DEFENDANT'S CONSPIRACY TO EXTORT, HARASS AND THREATEN PLAINTIFF

11. After termination of the business relationship between the parties, defendant claimed to plaintiff that plaintiff owed money to defendant due to their past business relationship and independent film production venture. Plaintiff informed defendant that it was defendant who in fact owed plaintiff money as a result of their former business dealings.

12. Beginning in September 2000, defendant entered into an agreement with several members of an organized crime family -- Anthony "Sonny" Ciccone, Primo Cassarino and Vincent Nasso (collectively, the "Co-Conspirators") -- to extort, harass and threaten plaintiff to induce plaintiff to pay defendant and his Co-Conspirators money and forego the right to make independent business decisions.

13. Defendant and his Co-Conspirators entered into this agreement with malice and with the intent of each to participate in illegal acts, including extortion, assault, murder, false imprisonment and threats of physical harm and murder, and cause injury to plaintiff.

14. Defendant and his Co-Conspirators entered into this agreement in New York.

3

15. Upon information and belief, at the onset of the conspiracy, defendant and his Co-Conspirators were the subject of a federal criminal investigation, and several of their conversations concerning the conspiracy were intercepted by federal investigators.

16. In or about October 2000, defendant and his Co-Conspirators traveled to Toronto, Canada to meet with plaintiff at plaintiff's rented home. During that meeting, at the direction of defendant and with the agreement and participation of defendant and his Co-Conspirators, Anthony "Sonny" Ciccone directed plaintiff to continue his business relationship with defendant. To this end, defendant and his Co-Conspirators physically and psychologically intimidated and harassed plaintiff. As a result of this conduct, plaintiff was placed in fear of imminent harm and agreed to try to continue his former business relationship with defendant.

17. In or about February 2001, while plaintiff was in New York, Vincent Nasso directed plaintiff to meet defendant and the Co-Conspirators at the home of defendant's mother in Brooklyn.

18. Due to his fear of imminent harm to his person, plaintiff brought a bodyguard with him to the meeting.

19. After Vincent Nasso directed plaintiff to appear at defendant's mother's residence, defendant directed Vincent Nasso to change the location of the meeting without plaintiff's knowledge, in order to cause plaintiff to suffer greater fear and anxiety.

4

20. Upon plaintiff's arrival at the home of defendant's mother, defendant and Vincent Nasso informed plaintiff that the meeting had been moved. They forced plaintiff to get into their automobile without his bodyguard.

21. Defendant and Vincent Nasso forced plaintiff to enter their automobile with the intent to confine plaintiff, without his consent, in order to increase plaintiff's fear and apprehension.

22. Upon confining plaintiff in the automobile, defendant and Vincent Nasso drove plaintiff, without his consent, to a private room at Gage & Tollner, a restaurant in Brooklyn. Plaintiff, defendant and his Co-Conspirators were present during this meeting.

23. During the February 2001 meeting, at the direction of defendant, Anthony "Sonny" Ciccone again indicated that he wanted plaintiff to continue his business relationship with defendant. At the direction of defendant, he further indicated that plaintiff would be required to pay money earned from his film career to defendant and his Co-Conspirators. To these ends, defendant and his Co-Conspirators physically and psychologically threatened, intimidated and harassed plaintiff. As a result of this conduct, plaintiff was placed in fear of imminent harm and agreed to try to continue his former business relationship with defendant.

24. During this meeting, defendant and his Co-Conspirators confined plaintiff in the private room at Gage & Tollner, without his consent, with the intent of placing plaintiff in fear of imminent danger.

5

25. As plaintiff left the restaurant, defendant followed plaintiff and informed plaintiff that he would be killed if he did not continue to accede to the demands of defendant and his Co-Conspirators. Defendant made this statement with the intent to place plaintiff in fear of imminent harm and to cause defendant extreme emotional distress.

26. Following the February 2001 meeting, federal investigators caught defendant's Co-Conspirators on audiotape in New York discussing the meeting with plaintiff. Among other things, they described defendant's role in changing the meeting location to unnerve plaintiff and described how their actions rendered plaintiff "petrified" and "scared."

27. In a subsequent February 2001 conversation captured on audiotape by federal investigators, defendant, in New York, encouraged his Co-Conspirators to intensify the pressure exerted on plaintiff, stating "you really gotta pound on him . . . ."

28. In or about March 2001, defendant and his Co-Conspirators came to plaintiff's home in Los Angeles. They reiterated their demand that plaintiff owed defendant money and demanded that plaintiff pay them a sum of three million dollars. To these ends, defendant and the Co-Conspirators physically and psychologically threatened, intimidated and harassed plaintiff. As a result of all of this conduct, plaintiff was placed in further fear of imminent harm.

29. At the conclusion of this meeting, defendant informed plaintiff that one of his Co-Conspirators had been made an "underboss" of an organized crime "family." Defendant

6

made this statement with the intent to place plaintiff in fear of imminent harm and to cause defendant extreme emotional distress.

30. During a subsequent telephone conversation in or about 2001, defendant called plaintiff from New York and further threatened plaintiff by indicating he would ask one of Co-Conspirators to physically harm, intimidate or harass plaintiff if plaintiff did not pay the demanded money to defendant.

31. On a subsequent occasion in or about 2001, defendant, from New York, telephoned plaintiff at his home in Los Angeles. Defendant informed plaintiff that defendant's associate was at the gate of plaintiff's home with a message for plaintiff. Defendant directed plaintiff to go to his front gate. When plaintiff went to his gate, a man was standing in front of the gate. The man did not communicate any oral message to plaintiff but proceeded to make threatening gestures at plaintiff, including gestures suggesting that plaintiff would be shot, and left. As a result of this conduct, plaintiff was placed in fear of imminent harm.

## CRIMINAL PROSECUTION OF DEFENDANT

32. In or about June 2002, defendant and his Co-Conspirators were indicted in the United States District Court, Eastern District of New York (U.S. v. Gotti et al., No. 02-CR-606). They were charged with conspiracy to extort plaintiff and attempted extortion of plaintiff. The Co-Conspirators were also indicted on additional charges.

33. On August 13, 2003, defendant pleaded guilty to conspiracy to extort plaintiff. At his allocution, he admitted that he "together with others, knowingly and

7

intentionally conspired to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, in that [he] and [his] conspirators agreed to obtain property, to wit money and the right to make business decisions free from outside pressure from Steven Seagal, with his consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear." Defendant further stated that "[a]n understanding was reached between myself and other participants . . . that one of the participants in the conversations would make statements to Seagal that would be perceived by Steven Seagal as a threat intended to induce payments of the monies that are still due me."

34.  On February 17, 2004, defendant was sentenced to jail time of one year and one day for conspiracy to extort plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Assault)

35.  Plaintiff realleges and incorporates paragraphs 1 through 34, as if fully asserted herein.

36.  As set forth above, defendant, individually and in concert with his Co-Conspirators, employed unjustifiable force against plaintiff with the malicious intent to create in plaintiff a reasonable apprehension of immediate physical harm.

37.  The conduct of defendant and his Co-Conspirators was designed to, and did, cause plaintiff severe anxiety and emotional distress.

8

38. The conduct of defendant and his Co-Conspirators additionally caused economic harm to plaintiff, including but not limited to resulting loss of earnings and injury to his professional reputation.

39. The conduct of defendant and his Co-Conspirators was outrageous, malicious and intended to willfully and wantonly cause injury to plaintiff, justifying the award of punitive damages.

40. As the conduct of defendant and his Co-Conspirators was part of an agreement by which defendant and each Co-Conspirator agreed to commit the tort of assault, with malice and with the intent to injure plaintiff, defendant is jointly and severally liable for all injury to plaintiff caused by the conspiracy.

## AS AND FOR A SECOND CAUSE OF ACTION
### (False Imprisonment)

41. Plaintiff realleges and incorporates paragraphs 1 through 34, as if fully asserted herein.

42. As set forth above, defendant, individually and in concert with his Co-Conspirators, wrongfully and completely confined plaintiff, with the intent to confine plaintiff for the purpose of extortion.

43. Plaintiff was conscious of, and did not consent to, the confinement, and the confinement was not justified.

9

44.  As a result of the conduct of defendant and his Co-Conspirators, plaintiff suffered severe anxiety and emotional distress.

45.  The conduct of defendant and his Co-Conspirators additionally caused economic harm to plaintiff, including but not limited to resulting loss of earnings and injury to his professional reputation.

46.  The conduct of defendant and his Co-Conspirators was outrageous, malicious and intended to willfully and wantonly cause injury to plaintiff, justifying the award of punitive damages.

47.  As the conduct of defendant and his Co-Conspirators was part of an agreement by which defendant and each Co-Conspirator agreed to commit the tort of false imprisonment, with malice and with the intent to injure plaintiff, defendant is jointly and severally liable for all injury to plaintiff caused by the conspiracy.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

48.  Plaintiff realleges and incorporates paragraphs 1 through 34, as if fully asserted herein.

49.  As set forth above, defendant, individually and in concert with his Co-Conspirators, engaged in extreme and outrageous conduct performed with the intent to cause, or in disregard of a substantial probability of causing, severe emotional distress to plaintiff.

10

50. As a result of the conduct of defendant and his Co-Conspirators, plaintiff suffered severe anxiety and emotional distress.

51. The conduct of defendant and his Co-Conspirators additionally caused economic harm to plaintiff, including but not limited to resulting loss of earnings and injury to his professional reputation.

52. The conduct of defendant and his Co-Conspirators was outrageous, malicious and intended to willfully and wantonly cause injury to plaintiff, justifying the award of punitive damages.

53. As the conduct of defendant and his Co-Conspirators was part of an agreement by which defendant and each Co-Conspirator agreed to commit the tort of intentional infliction of emotional distress, with malice and with the intent to injure plaintiff, defendant is jointly and severally liable for all injury to plaintiff caused by the conspiracy.

WHEREFORE, plaintiff respectfully requests that the Court enter judgment against defendant and award plaintiff compensatory and punitive damages in an amount to be proven at trial, plus costs and legal fees.

Dated:  New York, New York
        August 30, 2007

11

CHADBOURNE & PARKE LLP

By _____

Thomas J. Hall
Eric J. Przybylko
Attorneys for Plaintiff Steven Seagal
30 Rockefeller Plaza
New York, New York 10112
TEL: (212) 408-5100
FAX: (212) 541-5369

Of Counsel:

Abbe David Lowell
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
TEL: (202) 756-8000
FAX: (202) 756-8087

12

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK )
                                ss:
COUNTY OF NEW YORK )

I, Myrna E. Whitley-Fermin, being duly sworn say: I am not a party of the action, I am over 18 years of age and reside in Jamaica, New York. On September 27, 2007 I served the within NOTICE OF REMOVAL, by depositing a true copy thereof enclosed in a post-paid wrapper by next-day mail, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

TO:

    Thomas J. Hall Esq.
    Eric J. Przybylko
    Chadbourne & Parke LLP
    30 Rockefeller Plaza
    New York, NY 10112

                                                                      Myrna E. Whitley-Fermin

Sworn to Before me this
27th day of September, 2007

NOTARY PUBLIC CARVAJAL
NOTARY PUBLIC - STATE OF NEW YORK
REG. NO. 02CA6042401
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 22, 20__
11/29/10